THOMAS TOMLINSON and EDMUND DAVIS, Jr., *v.* CALEB SHEP-
PARD.

A bill was filed by one heir at law, against another heir at law, who was also adminis-
trator of the personal estate of the intestate, for the discovery of deeds; one, made
by the intestate, in his life time, and his wife, the mother of the parties, of property
belonging to the wife, to A. B.; the other, a deed from A. B. to the intestate, in his
life time; neither of which had been recorded. The bill stated, that after the death
of the intestate, the defendant had by fraud and circumvention procured a will to be
made by the mother, giving the property to him; and prayed a discovery of the
deeds; and also prayed the relief that the deeds might be established; and that the
defendant be directed to account for the complainant's portion of the rents and
profits. The answer discovered the deeds, but set up facts on which it claimed that
they were inoperative; and denied that the will made by the mother was procured
by fraud. On the pleadings and proofs it was ordered, that the bill be retained for
twelve months, and the complainant be at liberty to bring ejectment; and that the
defendant produce the deeds on the trial thereof; reserving all further directions.

On the 10th of June, 1847, Thomas Tomlinson, and Edmund.
Davis, Jr., an infant, by his next friend, Horace B. Davis, ex-
hibited their bill, stating, that David Sheppard, late of Hopewell,
in the county of Cumberland, died intestate, April 12th, 1846;
and that his son, Caleb Sheppard, administered on his estate,
and has in his hands, after paying all debts, a surplus of the
personal estate. That Eleanor, the wife of the said David, at
the time of her marriage with him, was seized of a farm, of about
sixty acres, in Hopewell, in said county, (describing it,) said farm
being now occupied by Wm. McPherson, as tenant of the said
Caleb Sheppard.

That on or about March 1st, 1843, the said David Sheppard
and his said wife, for the consideration of $2000 expressed in
said deed, and therein acknowledged to have been received, or.
some other sum, sold and conveyed the said farm to one John
Ayres. That the deed was acknowledged by the said David and
Eleanor, before Eli Ayres, a Commissioner, &c., whereby the
said John Ayres became seized of the said farm in fee.

That on or about the same day, the said John Ayres, by deed,
for the consideration of $2000 therein expressed and acknowl-
edged to have been received, sold and conveyed the said farm to,

the said David Sheppard, whereby he became seized thereof, in fee; and the said David, thereupon, took possession of the said farm, and was, either in person or by his tenants, possessed thereof, in his own right, as owner in fee, until his death; and also took possession of and retained until his death the said deeds to John Ayres and from John Ayres to him.

That after the making of the said deeds, and up to the time of his death, the said David considered himself as seized of the said farm, in fee, and often so declared; and at several times wrote down the outlines of a will disposing of said farm, among other property, as his own; and, in particular, the said David wrote the form or outline of such a will in one of his books, which book is now in the possession of the said Caleb Sheppard, administrator as aforesaid; and he also procured Ellis Ayres to draw for him a will, or the outlines or form of a will, in which he disposed of the said farm as his own; which, after the decease of the said David, was in the possession of or known to the said Caleb, and is now in his possession or under his control, unless he has destroyed or disposed of it.

That the said Caleb, before and after the decease of the said David, knew and was well aware of the execution of the said deeds; and at the time of the appraisement of the personal property of the said David, he expressly stated and admitted, and at several other times has stated, that the said farm belonged wholly to the said David, in fee simple, and not to his widow, the said Eleanor, or words to that effect.

That the said Caleb, well knowing as aforesaid, and that, on the death of the said David, one third of the said farm descended to his sister, Martha B. Randolph, applied to her and purchased of her, for $2200, her right and interest in and to the estate of her said father, real and personal, and obtained from her a deed or release therefor, dated on or about March 4th, 1846, the said farm being included in the said purchase, and the said price being more than her share of the real and personal estate would be worth unless she was entitled to one third of the said farm; and that said Caleb, after the said purchase, represented himself to be entitled to two thirds of said farm, subject to the dower of the said Eleanor, one third in his own right as one of the heirs of

said David, and one third by virtue of his said purchase from the said Martha; and he received the produce of the said farm accordingly.

That the said Caleb, after the death of the said David, and, as the complainants have reason to believe, after his said purchase from Martha, came, as the complainants believe and charge, into the possession of the said deeds to John Ayres and from him to the said David Sheppard, the same having never been recorded, and has since concealed or destroyed them.

That the said Caleb, having thus obtained the said deeds, or knowing that the complainants could not have access to them, prevailed upon the said Eleanor to make a will, which she did, upon his suggestion and procurement, as he had the same written or as he requested it should be written; and made on or about June 14th, 1846; by which will, after several small pecuniary legacies, she devises all the residue of her estate, whatsoever and wheresoever, whether real or personal, to the said Caleb, his heirs and assigns forever, and appoints him executor thereof; which will was admitted to probate, by the Surrogate of Cumberland, on or about April 27th, 1846, and was duly executed, as the complainants suppose, to pass real estate.

That since the probate of said will, the said Caleb claims the said farm as having been, at the execution thereof and at the death of the said Eleanor, the property of the said Eleanor, in fee simple, and as being devised to him by her said will; but the complainants charge, that the said farm was not, at the making of said will, or at the death of said Eleanor, the property of the said Eleanor; and that she repeatedly declared, before and at or about the time of making said will, and afterwards, that deeds for the same had been made and acknowledged as herein before stated, and that she supposed they were on record, and that the said farm was not her's to dispose of, or words to that effect.

The complainants charge, that the said Eleanor did not intend to' devise the said farm to the said Caleb, and did not believe when she executed said will that the effect of it would be to devise the same to the said Caleb. That the said Caleb, at the time of the making of the said will, and from that time till the death of the said Eleanor, concealed from her his knowledge that

the said deeds had not been recorded, though he knew, before the execution of said will, that they had not been recorded; and that he concealed from her his intention to claim the said farm as his exclusive property by virtue of her said will; and that he procured the said will to be made by fraud, circumvention and concealment.

That the said David and Eleanor had three children, Caleb, Martha B. Randolph, and Abigail who intermarried with one ——— Tomlinson; and the bill states the rights of the complainants as heirs at law.

The bill prays a discovery of the deeds; and that they may be established, and the contents and purport thereof ascertained by the decree of this Court; and that the said Caleb may be required to release and secure to each of the complainants, respectively, a good and sufficient title to the one undivided ninth part of the said farm; and that the possession thereof may be delivered to them, respectively; and that the said Caleb may account to them for their respective shares of the rents and profits thereof by him received since the decease of the said David Sheppard; and that the will of the said Eleanor Sheppard, so far as the same can or may affect or devise the said farm to the said Caleb, may be decreed to be fraudulent, void and inoperative; and for further relief.

The answer admits a surplus of personal estate in the hands of defendant, as administrator; that the said Eleanor, at the time of her marriage, was seized in fee simple of the farm; admits the deed from the said David and Eleanor to John Ayres; but says he is informed and believes, and is ready to prove, that no consideration passed at that time, or, as he is informed and believes, at any other time, between the parties thereto; admits that the said deed was duly acknowledged; that John Ayres, on the same day, conveyed the said property to David Sheppard, though he has been informed and believes that no consideration passed; and that this deed was duly acknowledged; that, after the said conveyance, the said David continued in possession of said farm as he had been in the possession thereof before; but denies that the said David acquired any title in fee simple to the farm by the said deed, because, at the execution thereof, it was

stated by the parties thereto that the said conveyances by the said David and Eleanor to the said John Ayres and from the said John to the said David were made solely to enable said David to devise the same ; and that the said Eleanor did not, at that or any other time, receive any consideration for signing the said deed.

Admits that said David took possession of said deeds ; that he then considered himself the owner of said farm in fee simple ; and that, in writing down the outlines of a will, he did, among other property, devise the said farm as though it was his own ; that he has found, among the books and papers of the said David, the outlines of a will, in the hand-writing of the said David, as he believes, in which he makes the following disposition of the said farm : " I give to my daughter Martha Randolph, during her natural life, all the place where I now live," being the farm in question, " and Stathem's neck marsh, and marsh over the creek ; and to Lewis Randolph during his natural life, and at the death of my wife and Martha and Lewis Randolph, to be sold by my executor, if living, or his executor or administrator, and the money that it fetches to be divided equally between my grand-son T. Tomlinson and my four grand-daughters, A. R., A. S. R., Naomy D. S., E. G. S., if living at the time of the sale, and to their children if they have any." He admits that he found among the papers of the said David the outlines or form of a will, in the hand-writing of Ellis Ayres, as he believes. Among devises of other property was the following of the said farm, that is to say : " I give to my daughter Martha Randolph, during her natural life, all my homestead farm, (being the farm in question;) including all my lands in Hopewell ; also my marsh in Greenwich township, in Stathem's neck, during her natural life. Also, in case of her death before her husband, Lewis Randolph, he to hold the same during his natural life, subject to the above bequest of $25, annually."

He admits that the said two forms or outlines of wills came to his possession as administrator ; which said forms or outlines of wills were never executed, but were left in an incomplete state, and are now in his custody or power, ready, &c.

He denies that he had any knowledge of the execution of the

said deeds from the said David and Eleanor to the said John Ayres, and from the said Ayres to the said David, before the death of the said David, or at the time of his death; but he admits, that shortly after said David's death he came to the knowledge that these deeds had been executed, by information of the said Eleanor, who informed him that she had conveyed her said farm to her said husband, to enable him to dispose of the same by will in a satisfactory manner; and, acting under the information thus obtained, he might have admitted and stated, at the time of the appraisement of the personal property, that the said farm belonged wholly to the estate of the said David, and not to the said Eleanor; though he has not now any recollection of such admission or statement; and he might have stated at sundry other times, shortly after his father's death, that the said farm belonged to his father in fee simple, and not to his mother, because he admits that he then so believed.

He admits he applied to and purchased from his sister Martha, for $2200, her right and interest in the estate of his father, as stated in the bill; and that when he made the said purchase he believed that she was entitled, as heir at law, to one third of said farm; and that said farm was included in the said purchase.

He says that, a few weeks after his father's death, and after he had taken out letters of administration, he found, among other papers belonging to the estate, the before-mentioned deeds; which were lying loosely among his papers and had never been recorded; that he took them into his possession, and they are now in his custody, ready to be produced; that he was advised that these deeds were inoperative and void; and, when they were shown to the said Eleanor, she declared them to be void, as her husband had promised her that he would not record them until he had written his will in accordance with their mutual wishes and desires. And this defendant verily believes, that his father thought they were inoperative and void, and of no force and effect in passing the fee of the said real estate until they had been placed on record.

He says that, when his mother learned that the said deeds had not been recorded, she considered the said farm her own;

that she took the crop of oats growing on it, and sold it, or procured it to be sold, for her own benefit.

He admits that the said Eleanor survived the said David, and died on or about April 15th, 1847; but denies that she ever spoke of the said farm as belonging to the heirs of the said David after she discovered that the said deeds had not been put on record, though she may have so spoken before; and denies that she ever received any dower therein; but says she always claimed the said farm, after that time, as her own.

He admits that the said Eleanor made her will, dated June 14th, 1846, of the purport and effect stated in the bill; and that it was admitted to probate; but he denies that it was written or executed by his suggestion or procurement, or that it was written as he requested it should be written; nor did he prevail on the said Eleanor to make a will; nor procure others to prevail on her; but the said Eleanor was left, so far as he knows and believes, to the exercise of her own judgment and discretion in the making and executing of the said will.

He admits that, since the probate of the said will, he has claimed the said farm as having been, at the execution of the will of the said Eleanor and at her death, her property, in fee simple; and as having been devised to him by the said Eleanor; and he claims that the said farm was her property at the time of the making of her said will and at her death.

He denies that the said Eleanor, at any time, after she discovered that said deeds were not on record, ever admitted that the said farm was not her's to dispose of, and, especially, that she declared at the time of executing said will, or afterwards, that said farm was not her's to dispose of, or any words to that or the like effect. He declares that the said Eleanor did intend to devise the said farm to him by the said will; that she well knew the force and effect of the said will, and that the effect would be to devise the said farm to him.

He denies that, either at the execution of the will or at any other time, he concealed from the said Eleanor that the said deeds were not put on record; but, on the contrary, informed her that they were not on record. Nor did he at any time con-

ceal from her his intention to claim the said farm as his exclusive property, by virtue of her said will.

He denies that he procured the said will to be made by fraud, circumvention or concealment; but, on the contrary, did not interfere himself, nor procure any one to interfere with the free and uncontrolled exercise of the judgment and discretion of the said Eleanor in making and executing her said will.

He says he ought not to put the said deeds on record, because they were only executed to enable the said David Sheppard to devise the said farm, and said David did not devise it; because no consideration was ever paid for the said farm; and because the said David, himself, as this defendant has been informed and believes, never supposed that the said deeds had any force or effect in transferring the title to the lands mentioned therein, until the same were placed upon record.

The cause was heard on the pleadings and proofs.

*L. Q. C. Elmer* for the complainants.

THE CHANCELLOR made the following order:

It is ordered that the bill be retained for twelve months; and the complainant be at liberty to bring an ejectment for the premises in question, and proceed to trial thereon in the mean time. And it is further ordered, that the defendant produce on the trial thereof the deeds from David Sheppard and wife to John Ayres and from John Ayres to David Sheppard, bearing date Jan'y 26th, 1843, made exhibits in this cause; and that the parties be at liberty to read the depositions taken in this cause of such of the witnesses as upon such trial shall be proved to be dead or unable to attend to be examined. And the Chancellor doth reserve the consideration of costs and of all further directions until after such trial shall be had; and the parties are to be at liberty to apply to the Court as occasion shall require.